IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBIN J. THOMPSON and OVERTON THOMPSON, III, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 3:19-CV-1117-MAB |
| vs. | ) ) ) |
| CRISP CONTAINER COMPANY, PEPSI MIDAMERICA CO., and JASON RAY BRASHER, | ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion filed by Plaintiffs Robin Thompson and Overton Thompson, III, seeking to compel Defendant Jason Brasher to authorize the release of specific medical records (Doc. 53). For the reasons explained below, the motion is denied.

## BACKGROUND

The complaint in this case alleges that on April 3, 2019, while driving northbound on Interstate 57, Plaintiff Robin Thompson slowed her vehicle due to a lane closure. Defendant Jason Brasher, who was driving a tractor trailer behind Ms. Thompson, failed to respond to the slowing traffic and crashed his truck into the rear of Ms. Thompson's vehicle at a high rate of speed.

Mr. Brasher submitted to a drug test at the hospital on the day of the collision, and

the results came back positive for benzodiazepines, opioids and marijuana. He was retested the day after the collision at his doctor's office and the results came back negative. Mr. Brasher provided his drug test results to his employer, to the State of Illinois, and to the Federal Government. Because those records were disclosed to an outside party for a purpose not related to the provision of medical care, they were no longer privileged and Plaintiffs were able to obtain a copy (Doc. 53, p. 7; Doc. 54, p. 5). *See Palm v. Holocker*, 131 N.E.3d 462, 475 (Ill. 2019) (noting court decisions that held physician-patient privilege did not apply to medical information voluntarily turned over to a third party in order to obtain or maintain driving privileges).

Plaintiffs' counsel then asked Mr. Brasher about the drug test results at his deposition. Specifically, they asked Brasher why his drug test was positive for benzodiazepines (Doc. 53-1, p. 20). Brasher stated he took .5 milligrams of Xanax the night before the incident (*Id.*). He explained that he did not have an active prescription for the medication, he "just had a couple left from an old prescription" (*Id.* at p. 21). Plaintiffs' counsel then asked Mr. Brasher when he last smoked marijuana prior to the incident (*Id.* at 20). He said it was about a week and a half beforehand (*Id.*) ("what, ten days, eleven–nine days, something like that"). Plaintiffs' counsel also asked Mr. Brasher what sort of opiates that he used (*Id.*). He responded "none" and then denied using cocaine and heroin after being specifically asked (*Id.*). Plaintiffs' counsel followed up by asking if he had an explanation for why his urine test was positive for an opiate (*Id.*). Mr. Brasher answered, "I took a Xanax. That's - - I mean that's my answer. There is no other answer." (*Id.*). Counsel for co-Defendants Crisp Container Company and Pepsi MidAmerica later asked

Brasher if he was high at the time of the collision, and he replied that he was not. (*Id.* at p. 25).

Following Mr. Brasher's deposition, Plaintiffs' counsel sought to obtain additional medical records to further investigate Brasher's level of intoxication at the time of the incident, which they contend is relevant to liability and punitive damages. Specifically, they asked for the EMS and hospital records from April 3, 2019, medical records regarding any blood or urine test administered on April 3 or 4, 2019, and physician records showing medications prescribed to Mr. Brasher, particularly Xanax (Doc. 53, pp. 2–3). Mr. Brasher objected, claiming he did not waive the physician/patient privilege and had not put his medical condition at issue.

The parties discussed the discovery dispute via email and the telephone, but were unable to resolve the issue on their own. Consequently, they turned to the Court. A discovery dispute hearing was held on June 22, 2020, at which the Court requested formal briefing from the parties on the issue (Doc. 52). Plaintiffs then filed the motion to compel that is presently before the Court (Doc. 53), and Defendant Brasher filed a response in opposition (Doc. 54).

## DISCUSSION

Illinois law provides that "[n]o physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient." *Palm v. Holocker*, 131 N.E.3d 462, 468 (Ill. 2019) (quoting 735 ILL. COMP. STAT. 5/8-802 (2019)). This privilege exists to protect the patient's privacy and to encourage the patient to freely and

fully disclose all information that may help the physician in treating the patient, in order to ensure the best diagnosis and outcome for the patient. *Palm*, 131 N.E.3d at 468. There are, however, exceptions to the privilege. *See* 735 ILL. COMP. STAT. 5/8-802. The Illinois statute lists fourteen situations in which the privilege does not apply, including in pertinent part, "in all actions brought by or against the patient, . . . wherein the patient's physical or mental condition is an issue." 735 ILL. COMP. STAT. 5/8-802(4). Illinois subscribes to the "near universal agreement among courts that the physician-patient privilege belongs to the patient and therefore only the patient may waive it by putting his physical or mental condition at issue." *Palm*, 131 N.E.3d at 472, 474. And when the patient is a defendant in a civil case, they put their own physical or mental condition at issue by affirmatively pleading it as part of a defense *Id.* at 470, 473 (agreeing with Defendant's interpretation of section 8-802(4) that "the exception applies only when a party puts his or her own physical condition at issue by affirmative pleading. Thus . . . a defendant in a civil case puts his or her own physical or mental condition at issue by asserting it as part of a defense."). *See* 1 KENNETH S. BROUN *ET AL.*, MCCORMICK ON EVIDENCE § 103 (8th ed.) ("With respect to defenses, a distinction is clearly to be seen between the allegation of a physical or mental condition, which will effect the waiver, and the mere denial of such a condition asserted by the adversary, which will not.").

Here, Mr. Brasher has never affirmatively raised his medical condition or health as a defense to liability in this case (*see* Doc. 20). It was Plaintiffs who, after receiving the non-privileged records of Mr. Brasher's drug test results, injected the theory into the case that Brasher was intoxicated at the time of the incident. And it is Plaintiffs who asked Mr.

Brasher about each of the drugs he tested positive for. Brasher simply answered those questions and denied he was high at the time of the collision.

By producing the drug test results to a third party outside the context of a patient seeking medical treatment, Brasher waived the privilege as to those particular records. *Palm*, 131 N.E.3d at 475–76 (collecting cases). That limited disclosure did not, however, open the door to Plaintiffs obtaining any of Brasher's other medical records. *See Palm*, 131 N.E.3d at 475–76. Brasher likewise did not affirmatively place his medical condition at issue when he testified, in response to deposition questions from Plaintiffs 'counsel, that he had not taken any drugs that affected his ability to drive at the time of the incident. *See* 1 KENNETH S. BROUN *ET AL.*, MCCORMICK ON EVIDENCE § 103 (8th ed.) ("If the patient reveals privileged matter on cross-examination, without claiming the privilege, this is usually held not to be a waiver of the privilege enabling the adversary to make further inquiry of the doctors, on the ground that such revelations were not "voluntary."); *Griego v. Douglas*, No. CIV 17-0244 KBM/JHR, 2018 WL 2376330 (D. N.M. May 24, 2018) (cited with approval by *Palm*, 131 N.E.3d at 471) ("[T]he general rule is that a defendant driver in a civil case does not waive the physician-patient privilege simply by denying fault . . . [and] a *plaintiff* may not effect a waiver of a *defendant's* privilege even where there is evidence that the defendant may have been impaired at the time of the collision.") (emphasis in original); *Muller v. Rogers*, 534 N.W.2d 724, 726 (Minn. Ct. App. 1995) ("Testimony elicited on cross-examination is not voluntary, and statements made by a patient on cross-examination do not constitute a waiver of medical privilege.") (citing *Briggs v. Chicago, Great W. Ry.*, 80 N.W.2d 625, 634 (Minn. 1957)). *See also Kraima v.*

*Ausman*, 850 N.E.2d 840, 846 (Ill. App. Ct. 2006) (in case where plaintiff alleged that defendant was physically limited by arthritis when he performed surgery on plaintiff's wife, defendant did not waive privilege when he testified, in response to deposition questions from plaintiff's attorney, that he relinquished his neurosurgery position for health reasons and further denied having any problems with arthritis when he performed the surgery at issue). *But see Doe v. Weinzweig*, 40 N.E.3d 351, 355 (Ill. App. Ct. 2015) (in case where plaintiff alleged defendant gave her herpes, defendant put his medical condition at issue and waived privilege when he filed a motion to dismiss and attached medical records and a declaration purporting to show that he was not infected with herpes at the relevant time.).

In sum, the Court concludes that Mr. Brasher only defended himself against Plaintiffs' allegations that he was intoxicated and he never affirmatively placed his medical condition at issue. Holding otherwise would mean that *Plaintiff* was allowed to place Defendant Brasher's physical condition in controversy and thereby effect a waiver of Brasher's medical privilege by asserting he was impaired on the day of the incident, which would "render the privilege virtually meaningless." *Palm*, 131 N.E.3d at 473.

The Court acknowledges that this ruling prevents Plaintiffs from obtaining medical records that are undeniably relevant to their theory that Mr. Brasher was intoxicated at the time of the collision and to their claim for punitive damages. However, "that is simply inherent in the nature of privileges," which are intended to prevent confidential yet relevant information from being disclosed. *Palm*, 131 N.E.3d at 474. *See also, e.g., id.* at 472 (collecting cases in which the plaintiff was not allowed to obtain

defendant's medical records even where there was evidence that the defendant may have been impaired at the time of the collision).

Plaintiffs' motion to compel (Doc. 53) is **DENIED.**

**IT IS SO ORDERED.**

**DATED: September 4, 2020**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**
